**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MARY REID,
                    Appellant,

        v.

DEPARTMENT OF THE AIR FORCE,
                    Agency.

DOCKET NUMBER
CH-0752-14-0849-I-1

DATE: April 5, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Bobby Devadoss, Esquire, and Stephanie Bernstein, Esquire, Dallas, Texas,
    for the appellant.

Loren H. Duffy, Esquire, Scott Air Force Base, Illinois, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1       The appellant has filed a petition for review and the agency has filed a cross petition for review of the initial decision, which affirmed the agency's removal action. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we DENY the petition for review and the cross petition for review.  We AFFIRM the initial decision.

¶2      Effective September 19, 2014, the agency removed the appellant from her GS‑13 Supervisory Air Transportation Specialist position based on a single charge of inappropriate conduct and behavior unbecoming of a Federal supervisor.  Initial Appeal File (IAF), Tab 5, Part A at 8‑9, 19‑20.  The agency's charge contained seven specifications, (a) through (g), alleging that the appellant made inappropriate comments of a sexual or sex‑based nature and touched an employee inappropriately on various occasions between October 2011 and April 2014.  IAF, Tab 5, Part D at 24, Tab 7 at 6.

¶3      The appellant filed an appeal with the Board regarding the removal action.  IAF, Tab 1.  She argued that she did not commit any of the misconduct alleged and that her removal did not promote the efficiency of the service.  *Id.* at 6.  She also alleged that the agency violated her due process rights by failing to give her all of the information it relied upon in reaching its decision.  IAF, Tab 18 at 1, Tab 21 at 2.  She requested a hearing, but subsequently withdrew that request.  IAF, Tab 1 at 2, Tab 17.

¶4      The administrative judge issued an initial decision, based on the written record, affirming the removal action.  IAF, Tab 27, Initial Decision (ID).  She found that the agency proved specifications (a), (b), (f), and (g) by preponderant

evidence and that, therefore, its charge could be sustained. ID at 4‑7, 12‑15. She did not sustain specifications (c), (d), and (e). ID at 8‑12. She found that the agency established a nexus between the sustained misconduct and the appellant's duties and that the penalty of removal was reasonable. ID at 15‑16, 18‑20. She also found that no due process violation or harmful error occurred. ID at 16‑17.

¶5  The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. She argues that the administrative judge erred in sustaining specifications (a), (b), (f), and (g) and that, therefore, the penalty of removal should be reversed or mitigated.[2] *Id.* The agency filed a response in opposition to the petition for review, to which the appellant did not reply. PFR File, Tab 3 at 6‑15. The agency also filed a cross petition for review, arguing that the administrative judge should have sustained specification (d) of the charge. *Id.* at 4‑6. The appellant did not respond to the agency's cross petition.

<u>The agency proved its charge by preponderant evidence.</u>

¶6  The administrative judge sustained specifications (a), (b), (f), and (g) and thus found that the agency proved its charge by preponderant evidence. *See Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (holding that where more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is

---

[2] The appellant also contends that statements the agency collected as part of its investigation of her alleged misconduct, IAF, Tab 5, were improperly obtained because she was not permitted to have an attorney present during her interview, whereas her accusers were allowed to have attorneys present, in violation of agency guidance, PFR File, Tab 1 at 17. She argues that, because of these violations, the administrative judge should not have relied upon these statements. *Id.* Although the appellant raised this argument before the agency, IAF, Tab 5, Part B at 7, she did not object to the admission of this evidence before the administrative judge. She thus is precluded from raising this objection now. *See Hill v. Department of Health & Human Services*, 28 M.S.P.R. 91, 92‑93 (1985) (finding that the appellant's failure to object to the admission of allegedly irrelevant evidence below precluded her from doing so on review).

sufficient to sustain the charge). For the reasons set forth below, we agree with her findings.[3]

*Specification (a)*

¶7    Specification (a) alleged that in February 2012, the appellant approached an employee, R.W., who was bent over in a cubicle, touched her buttocks and said, "Gross, you don't have panties on." IAF, Tab 5, Part D at 24. R.W. declared under penalty of perjury that, while she was bent over helping another employee, K.S., in K.S.' cubicle, the appellant approached her from behind, rubbed her buttocks, and said, "Gross you don't have any panties on." IAF, Tab 5, Part G at 11. K.S. declared under penalty of perjury that she witnessed the incident when it occurred in her cubicle. *Id.* at 22.

¶8    Before filing the instant appeal, the appellant declared under penalty of perjury that she did not "really recall" this incident but that she "may have slapped [R.W.] on the rear end." IAF, Tab 5, Part H at 4. She stated that she "may have said" to R.W., "You don't wear underwear," because it is common knowledge that R.W. does not wear underwear. *Id.*; *see* IAF, Tab 5, Part B at 24 (the appellant admitting that during her interview with a criminal investigator, she stated, "I probably did say gross, no panties."). She also "admit[ted] it is possible" that she touched R.W.'s buttocks in February 2012. *Id*. at 21. Yet, in affidavits created after she filed the instant Board appeal, she claimed that this incident "never took place" and "den[ied] ever saying such a vulgar, unprofessional comment." IAF, Tab 23 at 17, Tab 25 at 6. She also stated that if she did touch R.W.'s buttocks, "it was a knee jerk reaction to move her out of the way." IAF, Tab 23 at 17.

¶9    Presented with an issue of credibility as to whether the February 2012 incident occurred as alleged, the administrative judge concluded that R.W. and

---

[3] Neither party challenges the administrative judge's findings as to specifications (c) and (e), and so we will not disturb them.

K.S. were more credible than was the appellant. ID at 5‑6. She considered that the appellant's statement submitted in support of her Board appeal was inconsistent with her previous statements wherein she did not expressly deny the misconduct and admitted that it may have occurred in some form.[4] ID at 6. She also found that R.W. and K.S. were disinterested witnesses and was not persuaded by the appellant's claim that they were biased against her, possibly based on money or jealousy. *Id.*

¶10     On review, the appellant challenges the administrative judge's credibility finding. She argues that the administrative judge did not give proper weight to a large number of affidavits from employees stating that they did not witness this incident and do not believe the appellant would engage in such conduct. PFR File, Tab 1 at 9‑11. We disagree. The appellant did present affidavits from several current and former agency employees who are of the opinion that she would not engage in inappropriate conduct. IAF, Tab 23 at 23‑50.[5] However, the appellant herself has admitted to engaging in inappropriate conduct similar to that alleged in this specification. *See, e.g.*, IAF, Tab 5, Part B at 21 ("In the past, all the girls in the office would tap/slap each other on the buttocks."), 22 (admitting to showing R.W. and another employee the results of her breast reconstruction surgery and stating that she "should not have done this" and regrets doing so), Part H at 4 ("I may have given a pat on the butt, but that was just office horse play. . . . The girls in the office always play around."), 7

---

[4] In making her credibility findings, the administrative judge improperly considered the appellant's testimony to be self-serving. ID at 6. Although it was error to reject the appellant's testimony for this reason, the administrative judge's credibility findings were otherwise consistent with *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (listing those factors to be considered in making credibility determinations), and therefore are sustained for the reasons discussed below. *See Doe v. U.S. Postal Service*, 95 M.S.P.R. 493, ¶ 10 (2004) (sustaining credibility findings under similar circumstances).

[5] The appellant does not cite to the record or identify by name the witnesses to whom she is referring. Thus, we can only assume she is referring to these witness statements.

("[R.W.] would talk about things that would not be appropriate for the office and we all got wrapped up in it"), 8 (the appellant stating that R.W. skinny dipped at the appellant's house "with all the girls"). Thus, the appellant's witnesses' belief that she would never engage in such conduct is in conflict with the appellant's own statements. We therefore discern no basis to conclude that the administrative judge should have given their statements more weight. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 460 (1987) (contradictory evidence is a factor to be considered in assessing witness credibility).

¶11   The appellant also argues that the administrative judge improperly ignored the statement of a criminal investigator, S.T., who questioned R.W.'s credibility based on his observation of her while investigating the matter as a sexual assault. PFR File, Tab 1 at 10; IAF, Tab 5, Part I at 10. Again, we disagree. The administrative judge did not accord S.T.'s statement any weight because it is unsigned.[6] ID at 10. The appellant has not shown any error with this determination and we discern no basis to disturb it. S.T.'s unsigned statement is not entitled to more weight than R.W.'s and K.S.' sworn statements. *See Social Security Administration v. Whittlesey*, 59 M.S.P.R. 684, 692 (1993) (explaining that a sworn statement carries greater weight than one that is unsworn), *aff'd*, 39 F.3d 1197 (Fed. Cir. 1994) (Table). Further, S.T.'s statement is not specific to the February 2012 incident and expresses no opinion as to whether that particular incident occurred.

---

[6] The administrative judge stated that she could not accord S.T.'s statement any weight because of this deficiency, ID at 10, which is not accurate. An agency investigator signed a statement swearing that S.T.'s statement was an accurate summary of S.T.'s testimony during the agency's investigation. IAF, Tab 5, Part I at 10. Thus, the administrative judge should have analyzed the probative value of this hearsay evidence. *See generally Borninkhof v. Department of Justice*, 5 M.S.P.R. 77 (1981). We discern no harm, however, because we find that S.T.'s statement does not outweigh the other evidence upon which the administrative judge relied. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

¶12     We also note that another agency employee, S.S., declared under penalty of perjury that while riding in a car with R.W. and K.S. sometime in Spring 2012, he heard them discuss that the appellant had recently groped R.W.'s rear end while they were in K.S.' cubicle.  IAF, Tab 5, Part H at 23; *see Wright v. Department of Transportation*, 24 M.S.P.R. 550, 553 (1984) (finding the appellant's recollection of events to be more credible because it was based on his contemporaneous notes as to what occurred).  Also, in July 2012, R.W. sent an email to a coworker stating that her supervisor had "rubbed on [her] butt one day" and "said she doesn't have any underwear one [sic]."  IAF, Tab 5, Part J at 25; *see Wright*, 24 M.S.P.R. at 553.  Most importantly, although the appellant now vehemently denies this misconduct, she twice stated that she could not recall whether it occurred and conceded that it may have occurred.  Even when denying the misconduct, though, she left open the possibility that she may have touched R.W.'s buttocks as a "knee jerk reaction."  Based on the foregoing, we agree with the administrative judge that the agency proved this specification by preponderant evidence.

*Specification (b)*

¶13     Specification (b) alleged that the appellant touched R.W.'s buttocks in July 2012.  IAF, Tab 5, Part D at 24, Tab 7 at 6.  R.W. declared under penalty of perjury that this incident occurred.[7]  IAF, Tab 5, Part G at 11.  Her claim is corroborated by an email she sent to a coworker on July 24, 2012, wherein she reported that her supervisor had "smacked [her] on [her] butt" in front of one of the contractors that morning.  IAF, Tab 5, Part J at 25.  Based on the aforementioned evidence, and a finding that the appellant admitted to sometimes touching R.W.'s buttocks over at least a 2‑year period, the administrative judge sustained this specification.  ID at 7.

---

[7] R.W. stated that this incident occurred on July 24, 2013.  IAF, Tab 5, Part G at 11. We agree with the administrative judge that, based on R.W.'s contemporaneous email documenting the incident, she clearly meant that it occurred on July 24, 2012.  ID at 7.

¶14     The appellant argues that the administrative judge erred in sustaining this specification because she relied primarily on her finding that the appellant admitted to sometimes touching R.W.'s buttocks over at least a 2‑year period, which was based on a misinterpretation of one of the appellant's statements.  PFR File, Tab 1 at 11‑12.   Specifically, the administrative judge relied on the following statement: "One wonders why an active participant would wait two years to complain or why they simply didn't just say they no longer wanted their buttocks touched.  It would have stopped there."  IAF, Tab 5, Part B at 22; ID at 7.

¶15     Through her counsel, the appellant claims that this statement was not an admission, but rather, that she was simply raising a question as to R.W.'s credibility.  PFR File, Tab 1 at 12.  However, we need not rely on the appellant's counsel's interpretation of her statement, as the statements of a party's representative in a pleading do not constitute evidence.  *See Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995).  Even if the administrative judge misinterpreted the particular statement at issue, we discern no harm because, as discussed at length above, the appellant has clearly admitted to engaging in such behavior as part of so‑called office horseplay.  *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).  Further, we find that R.W.'s account of this incident, bolstered by her contemporaneous record of it, constitutes preponderant evidence sufficient to prove this specification.  *See Wright*, 24 M.S.P.R. at 553.

¶16     The appellant claims that, even if she did engage in this behavior, it did not constitute sexual harassment because such conduct commonly occurred in her office environment and was not unwelcome.  PFR File, Tab 1 at 11.  This argument is wholly irrelevant to whether the agency proved this specification because the appellant was not charged with sexual harassment.  *See Morrison v. National Aeronautics & Space Administration*, 65 M.S.P.R. 348, 356‑57 (1994).

Based on the above, we agree with the administrative judge that the agency proved this specification.

*Specification (f)*

¶17    Specification (f) alleged that in October 2011, the appellant told an employee, J.S., that her breasts were too small to produce milk and asked her if she produced chocolate milk.  IAF, Tab 5, Part D at 24, Tab 7 at 6.  J.S. declared under penalty of perjury that when she returned to work in October 2011, after giving birth, she was on her way to the lactation room and the appellant stated to her in front of R.W. that her breasts were too small to produce milk.  IAF, Tab 5, Part G at 19.  J.S. then explained to the appellant that breast size does not determine the amount of milk that a woman can produce.  *Id.*  The appellant then asked J.S. whether she produced chocolate milk.  *Id.*  The appellant apparently was alluding to J.S.' skin color, as J.S. then had to explain to her that a woman's skin color does not affect the type of milk she produces.  *Id.*

¶18    R.W. corroborated J.S.' claims.  She stated under penalty of perjury that in the fall of 2011, while J.S. was heading to the lactation room, the appellant asked J.S. how she could breastfeed with small breasts.  *Id.* at 12.  R.W. then explained to the appellant that a woman's breast size does not affect her ability to produce milk for her baby, and the appellant thereafter asked J.S. whether she produced chocolate milk.  *Id.*  The appellant conceded that she participated in a discussion regarding lactation with "a group of ladies" at work, including R.W., but denied making the aforementioned statements.  IAF, Tab 5, Part H at 6, Tab 24 at 3.

¶19    The administrative judge credited J.S.' claims over the appellant's denials.  ID at 12‑13.  She noted that R.W. corroborated J.S.' allegations and that the appellant failed to establish any reason why R.W. would be motivated to lie about witnessing this event as J.S. described.  ID at 12‑13.

¶20    The appellant challenges this credibility finding on review.  She argues that J.S. was biased against her because she was partially responsible for J.S.'

removal. PFR File, Tab 1 at 12-13. However, even if J.S. were biased against her, the fact remains that R.W. witnessed the incident and supports J.S.' claim. The appellant suggests that R.W. also is biased against her, but we are not persuaded by that claim. As evidence of bias, the appellant expresses her belief that R.W., K.S. and another employee, S.M., "corroborated stories and filed [equal employment opportunity (EEO)] complaints, each resulting in a substantial settlement." *Id.* at 12. The appellant does not explain why any actions R.W. took with respect to complaints K.S. and S.M. may have filed have any bearing on her account of the incident that occurred between J.S. and the appellant. She also has not explained why R.W.'s filing of an EEO complaint would motivate her to lie about something that happened to J.S. We further find it significant that, although the appellant now denies making the statement regarding J.S.' breast size and ability to produce milk, she previously stated that she could "neither deny nor confirm" whether she made that statement. IAF, Tab 5, Part C at 17; *see Hillen*, 35 M.S.P.R. at 459 (determining that a prior inconsistent statement raises doubt as to its truthfulness). Accordingly, we discern no basis to disturb the administrative judge's credibility finding. As a result, we agree with the administrative judge's decision to sustain specification (f).

*Specification (g)*

¶21 Specification (g) alleged that in or around March 2014, while S.S. was introducing her to a new team member, the appellant stated that she runs the "hot and horny hen house." IAF, Tab 5, Part D at 24. On the one hand, the appellant denied making this statement, but stated that her office branch was often referred to as the "Hormonal Hen House." IAF, Tab 24 at 3. On the other hand, S.S. declared under penalty of perjury that the appellant made this statement. IAF, Tab 5, Part H at 23. The appellant also submitted an unsworn statement from S.S. wherein he again confirmed that she made this statement. IAF, Tab 23 at 44. The

administrative judge credited S.S.' account over the appellant's.[8]  ID at 13.  She noted S.S.' consistency in affirming that the appellant made this remark.[9]  *Id.* Further, she noted that the appellant apparently did not consider S.S. to be biased against her, given that she proffered a statement she gathered from him as evidence in support of her appeal.  *Id.*

¶22    On review, the appellant contends that she made a reference to the "hormonal hen house," not the "hot and horny hen house," and surmises that S.S. "must have misheard her" because these two statements "may have sounded similar."  PFR File, Tab 1 at 13‑14.  The appellant raised this argument below and the administrative judge apparently did not find it persuasive.  ID at 13 (citing IAF, Tab 24 at 3).  Her mere disagreement with the administrative judge's resolution of this factual dispute provides no basis for review.  *See Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987).  In any event, we find it inherently improbable that one could mistake the word "hormonal" for the words "hot and horny."  *See Hillen*, 35 M.S.P.R. at 461 (the likelihood of an event occurring in the manner described is a factor to be considered in assessing credibility).  Therefore, we find that the administrative judge correctly sustained specification (g).

The penalty of removal was reasonable.

¶23    Where, as here, the agency's charge has been sustained, the Board will review an agency‑imposed penalty only to determine if the agency considered all

---

[8] The administrative judge also considered the appellant's self‑interest in denying the allegation.  ID at 13.  As discussed above, we find that this error does not detract from the administrative judge's otherwise well‑founded credibility determinations.  *See supra* ¶ 9 n.4.

[9] The administrative judge stated that S.S. reaffirmed his recollection of this incident three times.  ID at 13.  However, it appears that she relied twice on the same April 2015 unsworn statement, which appears more than once in the record.  *Compare* IAF, Tab 23 at 43‑44, *with* IAF, Tab 24 at 28‑29.  Even if S.S. only confirmed twice, as opposed to three times, that this incident occurred, it would not warrant a different outcome in this appeal.  *See Panter*, 22 M.S.P.R. at 282.

of the relevant factors and exercised management discretion within tolerable limits of reasonableness.[10] *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 25 (2014). In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Id.* The Board recognizes that its function is not to displace management's responsibility or to decide what penalty it would impose, but to assure that management judgment has been properly exercised and that the penalty selected by the agency does not exceed the maximum limits of reasonableness. *Id.* Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.*

¶24     The administrative judge affirmed the agency's removal action, finding that the agency considered the appropriate factors under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305‑06 (1981), and that the penalty of removal was reasonable. ID at 18‑20. As she observed, the deciding official considered the appellant's lengthy Federal service and her past work record. IAF, Tab 5, Part A at 11, 17, 19. However, he also considered that: (1) the nature of the charged misconduct was serious; (2) the appellant was a supervisor and, thus, held to a higher standard of conduct, *see Bowman v. Small Business Administration*, 122 M.S.P.R. 217, ¶ 12 (2015); (3) the appellant was on notice, based on training she received, that such conduct was not acceptable; (4) the appellant's misconduct negatively affected the work environment and caused agency management to lose trust and confidence in her ability to treat employees appropriately; and (5) the appellant demonstrated little potential for rehabilitation, given her failure to take responsibility for her misconduct and her

---

[10] The appellant does not dispute, and we will not disturb, the administrative judge's finding that there is a nexus between the sustained misconduct and her job duties. ID at 15-16.

assertion that the inappropriate conduct to which she did admit was merely normal office horseplay.  IAF, Tab 5, Part A at 10, 12, 14, 19‑20.

¶25    The appellant argues that the penalty of removal is unreasonable and should be mitigated because:  (1) she had 31 years of Federal service with no history of discipline;  and (2) three of the agency's specifications were not sustained.[11] PFR File, Tab 1 at 14‑16.  We are not persuaded by these arguments and will not disturb the agency's penalty determination.    The agency considered the appellant's length of service and work history, but found that those factors did not outweigh the aggravating factors it also considered.    We find that determination reasonable.  Further, although some of the agency's specifications have not been sustained, the sustained misconduct is extremely serious.    The Board has upheld the penalty of removal in similar cases involving a supervisor engaging in inappropriate behavior of a sexual nature, including touching.  *See Batten v. U.S. Postal Service*, 101 M.S.P.R. 222, ¶ 14 (stating that "[t]he Board has held that removal is a proper penalty when a supervisor makes inappropriate comments of a sexual nature to co-workers"), *aff'd*, 208 F. App'x 868 (Fed. Cir. 2006); *Luongo v. Department of Justice*, 95 M.S.P.R. 643, ¶¶ 2‑3, 13−16 (2004).  Accordingly, we agree with the administrative judge that the penalty of removal is within the bounds of reasonableness.

The agency has not established a basis for review.

¶26    The agency has filed a cross petition for review, arguing that the administrative judge erred in failing to sustain specification (d).  PFR File, Tab 3 at 4‑6.  Based upon specifications (a), (b), (f), and (g), the administrative judge found that the agency proved its charge by preponderant evidence and affirmed the agency's removal action.  ID at 13‑16, 18‑20.  As previously stated, we

---

[11] She also argues that the penalty of removal should be reversed because the agency failed to prove its charge by preponderant evidence.  PFR File, Tab 1 at 6‑7.  We reject this argument based on our finding that the agency indeed proved its charge by preponderant evidence.

discern no basis to disturb her decision. We therefore deny the agency's cross petition for review.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal

Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:        _____
                                         William D. Spencer
                                         Clerk of the Board

Washington, D.C.